## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| JEREMIAH WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:15-CV-466-PLR-CCS |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID RAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The Court is in receipt of a pro se prisoner's civil rights complaint and application to proceed *in forma pauperis*. Jeremiah Williamson ("Plaintiff") brings this civil rights complaint pursuant to 42 U.S.C. § 1983 against David Ray, Wayne Lee, and Larry Martin. Also before the Court is Plaintiff's motion to appoint counsel [Doc. 7] and motion for leave to amend complaint [Doc. 8].

### I.      Application to Proceed *In Forma Pauperis* [Doc. 2]

On December 23, 2015, the Court allowed Plaintiff additional time in which to submit supporting documents for his application to proceed *in forma pauperis* based on his recent transfer to Bledsoe County Correctional Complex. On January 12, 2016, Plaintiff provided the necessary documentation of his trust fund account needed to complete his application. Accordingly, Plaintiff's application to proceed without prepayment of fees is **GRANTED**. Nonetheless, because Plaintiff is an inmate, he is **ASSESSED** the filing fee of three hundred and fifty dollars ($350). *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). The custodian of Plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment,

whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the trust account custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350 has been paid to the Clerk's Office. *McGore,* 114 F.3d at 607.

Payments should be sent to: Clerk, USDC; 800 Market Street, Suite 130, Knoxville, Tennessee 37902. To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## I.     Screening the Complaint

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

In screening Plaintiff's complaint, the Court bears in mind that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the pleading must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the

2

misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citations and internal quotation marks omitted). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

For the purpose of screening the complaint in its entirety, the Court will first address Plaintiff's motion to amend his complaint.

## II.     Motion to Amend Complaint [Doc. 8]

Plaintiff seeks leave to file an amended complaint, but the motion filed is ambiguous as to Plaintiff's requested changes. In his motion, Plaintiff "requests leave to file an amended complaint adding to the complaint" [Doc. 8 p. 1]. His sole statement supporting his request argues that "[t]he [P]laintiff in his original complaint named David Ray, Defendant" [*Id*.].

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its pleading "once as a matter of course" within twenty-one days after service or twenty-one days after service of a responsive pleading or a Rule 12(b)(e) or (f) motion, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A)(B). The docket reflects the motion to amend was not filed within the time limits set out in the Federal Rules. Additionally, the Court finds that Plaintiff failed to comply with the Local Rules of the Eastern District of Tennessee. Local Rule 15.1 requires that "[a] party who moves to amend a pleading shall attach a copy of the proposed amended pleading to the motion. Any amendment to a pleading…shall…reproduce the entire pleading as amended

3

and may not incorporate any prior pleading by reference." E.D. Tenn. L.R. 15.1. Any amended complaint must be complete in itself without reference to his original complaint, as the original complaint will be superseded by the amended complaint. Here, Plaintiff failed to attach a proposed amended complaint to his motion.

The Court finds Plaintiff's motion to be unclear and is unable to determine Plaintiff's requested changes to his original complaint. Further, based on Plaintiff's failure to follow both the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Tennessee, the Court finds Plaintiff's motion to amend [Doc. 8] is not well-taken and is **DENIED**.

## III.     Plaintiff's Factual Allegations

On September 15, 2015, Plaintiff filed a grievance with the Claiborne County Justice Center complaining that religious services are being held in the area of general population rather than a separate designated forum [Doc. 1 p. 3]. Plaintiff argues that these services "disrupt the normal pod activity" and "are offensive to those who do not wish to participate" [*Id*.].

Defendant Martin responded to the grievance by explaining that religious services are provided for each pod and that if Plaintiff does not wish to attend these services he should retreat to his cell [*Id*. at 4].

On September 17, 2015, Plaintiff filed another grievance based on Defendant Martin's response [*Id*.]. Plaintiff complained that even in his cell, he is still able to hear the religious services [*Id*.]. Plaintiff further complained that his due process was being violated because there is no appeal process in place for grievances at Claiborne County Justice Center [*Id*.].

Plaintiff states that he signed a document stating that if he does not wish to hear or participate in the religious services offered in his pod, he could inform a correctional officer at the commencement of the service and will be taken to booking until its completion [*Id*.]. On

4

September 18, 2015, Plaintiff filed a third grievance complaining of the inconvenience caused by being placed in booking for the duration of the religious service [*Id*.]. Plaintiff asserts that this attempted resolution inconveniences his "telephone use, television programs, exercise workouts, etc." [*Id*.].

Moreover, in his complaint, Plaintiff alleges that he was "jumped and beaten up by several inmates" suffering head and face injuries [*Id*.]. He was taken to the hospital for treatment twenty-four hours after the alleged beating because the nurse could not be reached to approve the request prior to that time [*Id*.]. Plaintiff informed Sgt. Teresa Cloud that he wanted to file criminal charges against the assailants and was given a piece of notebook paper and clipboard to write down his statement [*Id*. at 5]. Plaintiff complains that he has not been interviewed by a detective concerning the altercation nor has anyone been charged [*Id*.].

On September 28, 2015, Plaintiff was transferred to the Union County Jail with no explanation for such transfer [*Id*.]. Then, on October 10, 2015, Plaintiff was transferred back to the Claiborne County Justice Center [*Id*.].

Plaintiff believes that his safety and rights are not of any importance to the Claiborne County Justice Center and requests that this Court allow a jury to decide what relief should be sanctioned [*Id*. at 6].

### A.    Defendants David Ray and Wayne Lee

No allegations of wrongdoing have been made against Defendants David Ray or Wayne Lee. In his complaint, Plaintiff identified Defendant Ray as the Claiborne County Sheriff and Defendant Lee as the Chief Deputy at Claiborne County Justice Center [Doc. 1 p. 3]. Perhaps, Plaintiff has named these individuals as defendants under the theory that they act as supervisors at the Claiborne County Justice Center, and therefore, responsible for properly managing the

5

staff and the operations at the jail. However, § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Migh. Dep't of Corrs.*, 69 F.3d 76, 80-81 (6th Cir. 1995). Though respondeat superior does not provide a valid basis of liability, *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981), *Rizzo v. Goode*, 423 U.S. 362 (1976), Plaintiff can still hold Defendants Ray and Lee liable if he can demonstrate that they implicitly authorized, approved, or knowingly acquiesced in the alleged wrongdoing of any of their subordinates, *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989), but these Defendants cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'" (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))).

Plaintiff does not allege that Defendants Ray or Lee knew of the complained allegations of civil rights violations. There is nothing from which to conclude Defendants Ray or Lee condoned any subordinate's alleged actions or failure to act on any risks to Plaintiff's health, safety, or well-being caused by the purported treatment during confinement. Accordingly, Defendants Ray and Lee are, therefore, **DISMISSED** as parties in this suit.

### B. Disturbance of Normal Pod Activity

Based on the facts alleged, Claiborne County Justice Center neither forces inmates to attend religious services nor restricts any rights of inmates to hold their own religious beliefs. The Court deduces that Plaintiff's complaints are based on the mere inconvenience caused by these services rather than the services themselves.

As a result of his grievances filed, Plaintiff was provided, and signed, a document allowing him to go to booking rather than be in the same vicinity of the religious services taking

6

place in his pod. Plaintiff complains that the services disrupt his use of phones, television, and his ability to exercise, because during the time the services take place, he has to go to booking in order to avoid hearing the program. The Court finds that none of the complained of inconveniences amount to a constitutional violation.

In the First Amendment context "prisoners have no per se constitutional right to use a telephone." *Dotson v. Calhoun Cty. Sheriff's Dep't*, 2008 WL 160622, at *2 (W.D. Mich. Jan. 15, 2008) *citing United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000). *See also Valdez v. Rosenbaum*, 302 F.3d 1039 (holding that there is no First Amendment right to telephone access, instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a means of exercising this right"); *Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that "an inmate has no right to unlimited telephone use"). "[A] prisoner's right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution." *Arney v. Simmons*, 26 F.Supp.2d 1288, 1293 (D. Kan. 1998) (citing *Washington*, 35 F.3d at 1100). "[D]ecisions made by prison officials regarding prison administration are entitled to significant deference." *Shue v. Herring*, 2006 U.S. Dist. LEXIS 73400, at *17-18 (M.D. N.C. Jan. 12, 2006) (citing *Bell v. Wolfish,* 441 U.S. 520 (1979)). Here, Plaintiff does not allege that he is unable to use the phone, but merely that using the phone during this time would be disturbed by the ongoing service. Plaintiff also fails to allege any named Defendant personally responsible for the lack of access to use the phone.

Similarly, there is no constitutional right to television while incarcerated. *Rawls v. Sundquist*, 1996 WL 288622 (M.D. Tenn. 1996) *aff'd*, 1997 WL 211289 (6th Cir. 1997) *citing Dede v. Baker*, 1994 WL 198179 at *2 (6th Cir. 1994); *Temple v. Dahm*, 905 F.Supp. 670, 674

7

(D. Neb. 1995) ("Plaintiff has no right to view television as arising from the Constitution."); *Glasshofer v. Jefes,* 1989 WL 95360 at *2 (E.D. Pa. 1989) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates."); *Lester v. Clymer,* 1989 WL 66621 at *2 (E.D. Pa. 1989) ("While it is not a subject of frequent litigation, it is nevertheless established that prisoners have no constitutional right to television.").

Plaintiff has further failed to establish that he has a constitutional right to exercise during the time of the alleged disturbance. An inmate has a constitutional right to maintain their health, but limitations on an inmate's ability to exercise only implicate that right when the limitations are so severe that "movement is denied and muscles are allowed to atrophy." *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir. 1988). Where the inmate retains the ability to retain physical fitness through alternative means, such as by jogging in place, or doing aerobic exercises or pushups, this concern is not implicated. *Id; Poco v. Hompe,* 2003 WL 23185882, at *11-12 (W.D. Wis. 2003). Although Plaintiff may prefer to work out at that specific time, nothing in Plaintiff's complaint suggests that he is unable to exercise, or deprived of the right to exercise, only that he chooses not to exercise during the time the alleged disturbance takes place.

As such, the Court finds that Plaintiff's claims regarding the disturbance of his normal pod activity are found to be a mere inconvenience rather than constitutional violations, and will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## C. Due Process

Plaintiff states that he lacked the ability to appeal his denied grievances because no such appeal process is in place at Claiborne County Justice Center. Plaintiff alleges that the lack of appeal process is a violation of his due process.

However, prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure."); *LaFlame v. Montgomery Cnty. Sheriff's Dep't,* 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"); *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) (finding that plaintiff's allegation that the institution's grievance procedures were inadequate to redress his grievances did not violate the Due Process Clause and did not "give rise to a liberty interest protected by the Due Process Clause"). Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right. *See Walker v. Mich. Dep't of Corr.*, 128 F.App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure").

Even if a grievance system was constitutionally guaranteed, Plaintiff has not shown how the lack of a grievance process directly affected his "ability to bring his claim before any court." *Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x. 866, 874-875 (6th Cir. 2011) (citation omitted).

Accordingly, Plaintiff's claim regarding the lack of ability to appeal a denied grievance will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## D. Deliberate Indifference

Plaintiff claims to have suffered head and face injuries as a result of being "jumped" by several inmates [Doc. 1 p. 4]. Plaintiff complains that he waited twenty-four hours before receiving any medical attention. Although Plaintiff does not complain of any specific constitutional violation, the Court interprets Plaintiff's argument to claim deliberate indifference to his medical needs.

The thrust of Plaintiff's claim is that he received inadequate medical attention because he was made to wait twenty-four hours after he requested medical treatment to receive any medical attention. However, the only remaining defendant in this case is Defendant Martin who is a jail administrator at Claiborne County Justice Center and was not mentioned in Plaintiff's allegations regarding medical treatment. Without any factual allegations against Defendant Martin, the Court cannot make a logical connection to Defendant Martin's involvement in Plaintiff's medication treatment.

Notwithstanding, the Constitution is transgressed when a prison official is deliberately indifferent to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Helling v. McKinney*, 509 U.S. 25, 31 (1993) (finding that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment"). An Eighth Amendment claim is composed of two parts: an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind - one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994).

An inmate "who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *See Berryman v.*

10

*Rieger,* 150 F.3d 561, 566 (6th Cir. 1998) (citing *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir.1991)); *see also Estelle*, 429 U.S. at 103 ("[T]he denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose."). However, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, a difference of opinion between medical care providers as to appropriate treatment for an inmate's ailment does not present a constitutional controversy. *Estelle*, 429 U.S. at 105-06; *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (finding that a disagreement between prison physician and physician who originally prescribed medications is not of constitutional magnitude).

Where a prisoner alleges that he has been denied medical care, the objective factor is satisfied by a condition which amounts to a serious medical need. *Estelle*, 429 U.S. at 104. Here, because Plaintiff has failed to identify his alleged medical condition, he has failed to satisfy the first element of an Eighth Amendment medical claim. Plaintiff's complaint negates any inference that Defendants acted with deliberate indifference to his serious medical need, as it cannot be concluded that he has described a sufficiently serious medical need. Plaintiff merely states that he sustain injury to his head and face but provides no description whatsoever of his alleged injury or the alleged altercation with other inmates. These complaints simply do not rise to the level of a serious medical need for purposes of constitutional analysis. Thus, under these circumstances, Plaintiff cannot state a cognizable § 1983 claim that Defendants were deliberately indifferent to his serious medical needs.

Accordingly, apart from Plaintiff's failure to name a defendant liable for his alleged lack of medical care, Plaintiff also failed to establish he had a serious medical condition. Therefore,

11

Plaintiff's delayed/inadequate medical care claims will be **DISMISSED** as frivolous and for failure to state a claim upon which relief may be granted.

### E. Retaliation

The Court assumes that Plaintiff's statements regarding his transfer to a different facility after he filed multiple grievances allude to a claim of retaliation by prison officials.

Prisoners retain their First Amendment rights "not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Pell v. Procunier,* 417 U.S. 817, 832 (1974)). One of the rights retained by inmates is the First Amendment right to file grievances against prison officials without retaliation for supposed misconduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). "Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir. 1994). "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) (citation omitted).

A prisoner states a retaliation claim if he pleads and proves that: (1) he engaged in protected conduct, (2) an adverse action was taken against him which would deter a person of ordinary firmness from continuing to engage in such conduct, and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Clearly, Plaintiff was engaged in protected conduct by filing a grievance, but Plaintiff has not provided evidence to show an adverse action or a retaliatory animus on the part of Defendants. The Court does not see any adverse action involved in Plaintiff's placement at Union County Jail for less than one month before returning to Claiborne County Justice Center.

12

The Sixth Circuit has "repeatedly held that transfer from one prison to another prison 'cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, 78 Fed. App'x. 529, 543 (6th Cir. 2003). Thus, the mere transfer to a different prison, without more, is not an adverse action. *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). Plaintiff's allegations are also insufficient to satisfy the third requirement that the adverse action was motivated, at least in part, by the protected conduct. In fact, Plaintiff's vague, factually unsupported, allegation that he was transferred to Union County Jail with no explanation as to why the transfer occurred, fails to name or even identify as a prison official the person or entity involved in the decision to transfer him.

All claims of retaliation by Plaintiff lack factual support and are conclusory. Conclusory allegations will not support a § 1983 claim. *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (citing *Lillard v. Shelby County Bd. of E*duc.,76 F.3d 716, 726 (6th Cir. 1987)); *Nafziger v.McDermott Int'l, Inc.*, 467 F.3d 514, 520 (6th Cir. 2006) (observing that "the court is not required to create a claim for the plaintiff[]") (internal quotation marks and citation omitted); *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir.1996) (instructing courts not to suppose a plaintiff would be able to show facts not alleged or that a defendant has violated the law in ways not alleged).

Accordingly, Plaintiff's retaliatory transfer claim will be **DISMISSED** for failure to state a claim upon which relief may be granted.

## IV.   Motion to Appoint Counsel [Doc. 7]

Plaintiff has requested that the Court appoint counsel for him in this matter based on "his lack of knowledge and experience in the legal field" [Doc. 7 p.1].   However, this Court's resolution of Plaintiff's § 1983 complaint renders his request for counsel moot.   Accordingly, the motion to appoint counsel [Doc. 7] is **DENIED as moot**.

## V.   Conclusion

In light of the above law and analysis, the Court finds Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**, motion to amend his complaint [Doc. 8] is **DENIED,** and motion to appoint counsel [Doc. 7] is **DENIED as moot**.

The Court further finds that Plaintiff's contentions fail to state § 1983 claims against Defendants, and therefore, this case will be **DISMISSED** *sua sponte* in its entirety under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

The Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a)(3) and hereby **CERTIFIES** that any appeal from this decision would not be taken in good faith. *See* Fed. R. App. P. 24(a).

**AN APPROPRIATE ORDER WILL FOLLOW.**

_____
**UNITED STATES DISTRICT JUDGE**